Robert Carey, (SBN 011186)
John DeStefano, (SBN 025440)
E. Tory Beardsley (SBN 031926)
**HAGENS BERMAN SOBOL SHAPIRO LLP**
11 West Jefferson Street, Suite 1000
Phoenix, AZ 85003
Telephone: (602) 840-5900
Facsimile: (602) 840-3012
Email: rob@hbsslaw.com
johnd@hbsslaw.com
toryb@hbsslaw.com

Benjamin Taylor (SBN 023868)
**TAYLOR & GOMEZ LAW**
2600 N. 44th Street, B-101
Phoenix, AZ 85008
Telephone:(602) 403-0212
Email: bt@taylorgomezlaw.com

*Attorneys for Plaintiff and the Proposed Class*

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Seth Bradley, individually, as surviving father and statutory beneficiary of Tariq Riley-Bradley, deceased, and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>State Farm Mutual Automobile Insurance Company, an Illinois corporation,<br><br>Defendant. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

# I. INTRODUCTION

1. Arizona law allows insurers to draft their standard form auto insurance policies such that, when an insured dies in a motor vehicle accident, recovery of underinsured motorist ("UIM") benefits for that wrongful death is limited to persons who are *both* qualified to bring a wrongful death action pursuant to A.R.S. § 12-612 *and* meet the requirements of A.R.S. § 20-259.03 ("a surviving insured under the same coverages of the policy").

2. As the Arizona Court of Appeals has explained, "[t]he clear legislative mandate of A.R.S. § 20-259.03 is to preclude recovery of UM benefits by a statutory beneficiary who is not also an insured under the policy." *Bither v. Country Mut. Ins. Co.*, 245 P.3d 883, 885-86 (Ariz. Ct. App. 2010). But this preclusion is not self-executing; the insurer may only avail itself of it by narrowing its definition of "insured" to be "a surviving insured under the same coverages of the policy" in the policy's Underinsured Motor Vehicle ("UIM") coverage. *See State Farm Mut. Auto. Ins. Co. v. White*, 295 P.3d 435, 439 (Ariz. Ct. App. 2013) (internal punctuation omitted).

3. State Farm Mutual Automobile Insurance Company ("State Farm" or "Defendant") wrote that same limitation into its own standard Arizona policy form. The Underinsured Motor Vehicle ("UIM") Coverage of State Farm's Arizona personal car policy narrowly defines "Insured" to mean the named insured and "resident relatives" (along with permissive occupants of covered vehicles), and its payment provisions permit payment only to the insured, the insured's surviving spouse, a parent or guardian of a minor or incompetent insured, or "[a] *person* authorized by law to receive such payment."

4. Despite this, State Farm refuses to follow its own policy language and Arizona law when it owes a full UIM policy limit to one or more "Insureds" on that coverage but one or more other persons exist who are not "Insureds" but qualify to bring a wrongful death action pursuant to A.R.S. § 12-612.

5. In that instance, when a surviving insured presents a wrongful-death UIM claim, State Farm insists on adding non-insured statutory beneficiaries—strangers to the

policy who contributed nothing toward the coverage State Farm demands they receive and do not meet State Farm's policy definition of "Insured"—as payees on the settlement check.

6. State Farm withholds payment of admittedly owed benefits to its own insureds unless they succumb to the pressure of receiving nothing and/or agreeing to share the settlement funds with those not entitled to it under the policy.

7. Shockingly, State Farm's claim representative told Plaintiff's counsel on this claim, "we [State Farm] don't follow the UIM policy language with regard to the settlement."

8. State Farm effectively forces its insureds to choose between giving away a portion of their rightful benefits or receiving no payment at all.

9. This practice breaches State Farm's insurance contracts and constitutes bad faith.

10. Plaintiff brings this action both individually and on behalf of a class of similarly situated State Farm insureds, seeking compensatory and punitive damages.

## II. PARTIES

11. Plaintiff Seth Bradley ("Bradley" or "Plaintiff") is a resident and citizen of Arizona, residing in Glendale, Arizona.

12. Bradley is the surviving father of Tariq Riley-Bradley ("Tariq"), who is deceased, and is the only statutory claimant for Tariq's wrongful death under Arizona law, including A.R.S. §§ 12-611 and 12-612, and who is also an insured under this policy.

13. Bradley is the named insured on State Farm Personal Car Policy No. 0860407-SFP-03 (the "Policy"). A true and correct copy of the Policy is attached hereto at **Exhibit A**.

14. At the time of his death, Tariq lived with Bradley and was a "resident relative" insured covered under the Policy's Underinsured Motor Vehicle Coverage.

15. Defendant State Farm is an insurance company incorporated under the laws of Illinois, with its principal place of business in Bloomington, Illinois, which is authorized to do and does business in the State of Arizona.

16. Whenever this Complaint alleges that State Farm did any act or thing, it means that State Farm, along with its agents, officers, servants, employees, or representatives, did so. Furthermore, such acts or actions were carried out with the full authorization or ratification of State Farm, were part of the normal and routine course of business, or were performed with the actual, apparent, or implied authority of State Farm and its officers, agents, servants, employees, or representatives.

## III. JURISDICTION AND VENUE

17. This Court has jurisdiction under 28 U.S.C. § 1332(a) because Plaintiff and Defendant are citizens of different states—Plaintiff is a citizen of Arizona, all Class Members are residents of Arizona, and Defendant is a citizen of Illinois (where it is incorporated and has its principal place of business)—and the amount in controversy, including withheld policy benefits, consequential damages, attorneys' fees recoverable by statute, and punitive damages, exceeds $75,000, exclusive of interest and costs.

18. This Court also has jurisdiction under the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d), because the aggregate amount in controversy exceeds $5,000,000, exclusive of interest and costs, and there is minimal diversity between the parties.

19. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because a substantial part of the events giving rise to the claims described herein occurred within this District, and the Policy was issued and delivered in this District.

## IV. GENERAL ALLEGATIONS

20. A.R.S. § 20-259.03 governs how an insurer may limit who may recover UM and UIM benefits for the wrongful death of an insured. It provides in its entirety:

> Notwithstanding any other law, in the case of the death of an insured who is covered under the uninsured and underinsured motorist coverages of a motor vehicle liability policy,

> recovery for wrongful death is limited to any party who is qualified to bring a wrongful death action pursuant to section 12-612 and who is also a surviving insured under the same coverages of the policy. If there are no surviving insureds who qualify to bring a wrongful death action pursuant to section 12-612, the estate of the deceased insured maintains the right of recovery against the uninsured and underinsured motorist coverages of the motor vehicle policy.

21. Where, as here, the insurer has drafted its policy to invoke the statute's limitation, the statute's two requirements are conjunctive: The claimant must be qualified to bring a wrongful death action under A.R.S. § 12-612, and must also be "a surviving insured under the same coverages of the policy."

22. A claimant who satisfies only the first requirement has no right to UM/UIM proceeds.

23. In *Bither*, 245 P.3d at 885-86, the court held that a mother could not recover UM benefits for her daughter's death because, despite having a statutory wrongful-death claim pursuant to A.R.S. § 12-612, she was not 'a surviving insured' within the meaning of the policy.

24. State Farm's form automobile policy previously broadly defined "Insured" as "any person entitled to recover damages because of bodily injury to an insured."

25. In 2013, the Arizona Court of Appeals rejected State Farm's attempts to limit UIM wrongful death payments as permitted in A.R.S. § 20-259.03, while this broader definition of "Insured" remained in its policy. *White*, 295 P.3d at 439.

26. The *White* court held that A.R.S. § 20-259.03 "allows an insurer to pay wrongful-death UIM benefits to any eligible claimant that the insurer has chosen to define as a 'surviving insured under the same coverage[] of the policy.'" 295 P.3d at 439.

27. There, the deceased insured's non-resident mother was allowed to recover only because State Farm's then-existing policy language broadly defined "insured" to include "*any person* entitled to recover damages because of bodily injury to an insured." *Id.* at 437 (emphasis added). In other words, State Farm could not limit its UIM claim payments as it chose to do because it had not drafted its policy to track the statute.

28. Following *White*, State Farm narrowed the policy's definition of "Insured" under its UIM coverage to mean only the named insured ("you") and "resident relatives," certain permissive occupants of covered vehicles, and the named insured and resident relatives entitled to recover compensatory damages as a result of bodily injury to an insured. **Ex. A**, Policy at 28-29 (Form 9803C at 15-16).

29. In short, State Farm modified its policy to preclude coverage for non-insured "persons" under its UIM policy part.

30. By contrast, though, State Farm retained its broad definitional language in the UM portion of the very same standard policy form—including the Policy at issue here—which defines "Insured" to include not only the named insured ("you"), "resident relatives," and permissive occupants of covered vehicles, but also:

> 4. any *person* or organization entitled to recover compensatory damages as a result of *bodily injury* to an *insured* as defined in 1., 2., or 3. above.
>
> **Ex. A**, Policy at 25-26 (Form 9803C at 12-13).

31. State Farm therefore knows and strategically chooses how and when its policy language extends coverage to any person "entitled to recover compensatory damages" arising from injury to an insured. State Farm deliberately omitted that language from the Underinsured Motor Vehicle Coverage.

32. Under *White* and A.R.S. § 20-259.03, that drafting choice determines who may recover wrongful-death UIM benefits: only statutory wrongful-death claimants who are the named insured or resident relatives.

33. The combined effect of A.R.S. § 20-259.03 and the definition of "Insured" that State Farm itself chose and agreed would be a binding and enforceable promise is that wrongful-death UIM benefits under State Farm's current Arizona policy form are payable only to statutory wrongful-death claimants who are also the named insured or resident relatives—not to every wrongful-death beneficiary described in A.R.S. § 12-612.

34. State Farm may not insist that an "Insured" share any portion of the UIM policy limit with someone who does not meet the definition of "Insured."

35. State Farm knows that its UIM policy definitions control.

36. On July 6, 2026—while State Farm was withholding Plaintiff's benefits here—State Farm prevailed in the Arizona Supreme Court by urging that the question of who counts as an "insured" for UM/UIM purposes is answered by the statutory framework and the policy itself. *State Farm Mut. Auto. Ins. Co. v. Balzan*, No. CV-24-0140-PR, 2026 WL 1954333, at *1 (Ariz. July 6, 2026).

37. The *Balzan* court observed that State Farm's "policies define 'insured' as 'you,'" that "'you' refers to the named insureds listed in the declarations," and that the policy's references to an insured concern "the named insureds who procured the coverage, not every person who may have contributed funds toward the premium or later benefited from the coverage." *Id.* at *5 ¶ 23.

38. When enforcing its UIM policy definitions as written serves State Farm's interests, State Farm insists upon those definitions—all the way to the Arizona Supreme Court. When following those same definitions would require State Farm to pay its insured alone, State Farm announces that it does not "follow the UIM policy language." The constant in both postures is State Farm's own advantage, never its insureds'.

39. An insurance contract is not an ordinary commercial bargain. Insurance is purchased not to secure a commercial advantage but to obtain protection, security, and peace of mind against calamity, and the insured is often in an especially vulnerable economic position when the insured-against loss occurs. "The whole purpose of insurance is defeated if an insurance company can refuse or fail, without jurisdiction, to pay a valid claim." *Noble v. Nat'l Am. Life Ins. Co.*, 624 P.2d 866, 868 (Ariz. 1981).

40. Implied in every insurance contract in Arizona is a covenant of good faith and fair dealing. Under that covenant, an insurer must deal fairly with its insured, giving, in all matters, equal consideration to the interests of the insured and not placing its own interests ahead of the insured's. *See, e.g.*, *Rawlings v. Apodaca*, 726 P.2d 565, 572-73 (Ariz. 1986). The insurer bears "some duties of a fiduciary nature, including equal consideration, fairness and honesty," and "may be held liable in a first-party case when it

seeks to gain unfair financial advantage of its insured through conduct that invades the insured's right to honest and fair treatment." *Zilisch v. State Farm Mut. Auto. Ins. Co.*, 995 P.2d 276, 279-80 (Ariz. 2000) (internal quotations and punctuation omitted).

41. An insurer "has an obligation to immediately conduct an adequate investigation, act reasonably in evaluating the claim, and act promptly in paying a legitimate claim. It should do nothing that jeopardizes the insured's security under the policy. It should not force an insured to go through needless adversarial hoops to achieve its rights under the policy. It cannot lowball claims or delay claims hoping that the insured will settle for less. Equal consideration of the insured requires more than that." *Id.* at 280.

42. And while an insurer may challenge claims that are fairly debatable, fair debatability is a necessary condition to avoid a claim of bad faith, not always a sufficient one; if an insurer acts unreasonably in the manner in which it processes a claim, it will be held liable for bad faith "without regard to [the] ultimate merits." *Id.* at 279-80.

43. The insurer's obligation to reasonably investigate a claim extends to the applicable law and the insurer's own policy language. An insurer lacks the "founded belief" necessary to support its claim position "when the insurer either knows that its position is groundless or when it fails to undertake an investigation adequate to determine whether its position is tenable." *Rawlings*, 726 P.2d at 576.

44. An insurer must look for coverage and benefits owed rather than for reasons to withhold them, must construe its policy in accordance with known law, must apply the law uniformly to its insureds, and may take only claim positions that are reasonable under the circumstances.

45. The duty of good faith "encompasses some obligation to inform the insured about the extent of coverage and his or her rights under the policy and to do so in a way that is not misleading." *Nardelli v. Metro. Grp. Prop. & Cas. Ins. Co.*, 277 P.3d 789, 800 (Ariz. Ct. App. 2012). That duty of disclosure is affirmative: the insurer may not remain silent, misstate the persons entitled to benefits, or shift to the insured or the insured's

counsel the burden of discovering—or of proving to the insurer—what the insurer's own policy provides and what Arizona law requires.

46. The duty of good faith and fair dealing also includes an obligation to handle claims in accordance with the policy's actual terms and applicable law, to inform the insured accurately about available coverages and benefits, and not to conceal or misrepresent pertinent policy provisions. *See, e.g.*, A.R.S. § 20-461; Ariz. Admin. Code R20-6-801.

47. Arizona statutes and regulations establish minimum standards for the handling of claims that inform the insurer's duty of good faith and fair dealing and the standard of care in the insurance industry.

48. Under A.R.S. § 20-461(A), unfair claim settlement practices include: misrepresenting pertinent facts or insurance policy provisions relating to coverages at issue, § 20-461(A)(1); failing to acknowledge and act reasonably and promptly upon communications with respect to claims, § 20-461(A)(2); refusing to pay claims without conducting a reasonable investigation based upon all available information, § 20-461(A)(4); failing to affirm or deny coverage of claims within a reasonable time, § 20-461(A)(5); not attempting in good faith to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear, § 20-461(A)(6); and compelling insureds to institute litigation to recover amounts due under an insurance policy, § 20-461(A)(8).

49. Likewise, Ariz. Admin. Code R20-6-801 requires an insurer, among other things, to: fully disclose to first-party claimants all pertinent benefits, coverages, and other provisions of a policy under which a claim is presented, and not conceal them, R20-6-801(D)(1), (D)(2); refrain from seeking releases that extend beyond the subject matter that gave rise to the claim payment, R20-6-801(D); reply within ten working days to communications from a claimant that reasonably suggest a response is expected, R20-6-801(E)(3); complete the investigation of a claim within thirty days after notification unless the investigation cannot reasonably be completed in that time, R20-6-801(F); advise the

first party claimant of the acceptance or denial of the claim within fifteen working days after receipt of properly executed proofs of loss, R20-6-801(G)(1)(a); and refrain from denying a claim on the grounds of a specific policy provision, condition, or exclusion unless reference to that provision, condition, or exclusion is included in a written denial, *id*.

50. These statutory and regulatory standards inform the duty of good faith and fair dealing and are incorporated into the claim-handling standards and training of reasonable insurers doing business in Arizona.

51. Plaintiff pleads these standards as predicates informing his breach of contract and bad faith claims, not as independent causes of action.

## V. FACTUAL ALLEGATIONS

### A. State Farm withholds UIM benefits to force its insured to share them with a non-insured.

52. On February 11, 2026, at approximately 6:57 p.m., Tariq was on foot, crossing West Bethany Home Road near North 51st Avenue in Glendale, Arizona, when he was struck by a 2019 Toyota Camry driven eastbound by Jacob Paul Thibado ("Thibado") (the "Collision").

53. According to the police report, Thibado was traveling approximately 40 miles per hour and reported that he did not see Tariq until Tariq was directly in front of his vehicle. Thibado did not brake before impact.

54. Thibado failed to keep a proper lookout and failed to control his vehicle to avoid a pedestrian in the roadway.

55. Thibado was negligent, and his negligence caused the Collision and Tariq's death.

56. Tariq suffered catastrophic injuries in the Collision. He was transported to the hospital with life-threatening injuries, never regained consciousness, and was pronounced deceased on February 24, 2026.

57. At the time of the Collision, Thibado carried motor vehicle liability insurance applicable to the Collision through GEICO Secure Insurance Company ("GEICO"), under a policy with bodily injury limits of $25,000 per person and $50,000 per accident. Thibado had no other liability insurance applicable to the Collision.

58. On April 9, 2026, GEICO, through counsel, tendered its $25,000 per-person bodily injury limit to resolve the liability claim arising from Tariq's death.

59. Thibado's $25,000 liability limit does not adequately compensate for the wrongful death of Tariq. Thibado was, therefore, underinsured. *See* A.R.S. § 20-259.01(G).

60. At the time of the Collision, the Policy was in full force and effect, insuring three vehicles, each with Underinsured Motor Vehicle Coverage bodily injury limits of $25,000 each person and $50,000 each accident. Ex. A, Policy at 5-7 (Declarations).

61. The Policy's Underinsured Motor Vehicle Coverage defines who is an "Insured":

> ***Insured*** means:
>
> 1. ***you*** and ***resident relatives***; . . .
>
> 3. ***you*** and ***resident relatives*** entitled to recover compensatory damages as a result of ***bodily injury*** to an ***insured*** as defined in 1. above.

Ex. A at 28-29 (Form 9803C at 15-16) (emphasis in original).

62. The Policy's Underinsured Motor Vehicle Coverage further specifies to whom payment may be made:

> Our Payment Options
>
> ***We*** may, at ***our*** option, make payment to one or more of the following:
>
> 1. The ***insured***;
>
> 2. The ***insured's*** surviving spouse;
>
> 3. A parent or guardian of the ***insured***, if the ***insured*** is a minor or an incompetent *person*; or
>
> 4. A ***person*** authorized by law to receive such payment.

*Id.* at 31 (Form 9803C at 18) (emphasis in original).

63. Bradley, as the named insured, and Tariq, as a resident relative, were each "insureds" under the Policy's UIM Coverage. No other person is an insured under that coverage with respect to the Collision.

64. Tariq's mother, Kenyatta Faith Riley, did not reside in Bradley's household at the time of the Collision. She and Bradley were never married, including at the time of the Collision. She resided in Georgia at the time of the accident.

65. Kenyatta Faith Riley is not a named insured under the Policy, is not a "resident relative," and is not an "insured" or "surviving insured" under the Policy's Underinsured Motor Vehicle Coverage.

66. Bradley is the only person who is both qualified to bring a wrongful death action for Tariq's death under A.R.S. § 12-612 and an insured under the UIM coverage of the Policy. As such, under A.R.S. § 20-259.03 and the Policy's express terms, Bradley alone is entitled to the UIM proceeds payable for Tariq's wrongful death.

67. Bradley, through counsel, presented a UIM claim to State Farm for the wrongful death of Tariq, which State Farm assigned Claim No. 03-98Z9-89C.

68. On April 24, 2026, State Farm tendered its $25,000 per-person UIM policy limit, subject to payment instructions and proof of underlying coverage.

69. On June 12, 2026, Bradley's counsel provided State Farm with the requested payment instructions and proof of underlying coverage, directing that the settlement draft be made payable solely to Bradley and his counsel's law firm, and providing the express Policy language establishing that Bradley is the only person to whom the UIM proceeds are payable.

70. State Farm refused to pay as directed. Instead, in a voicemail to Bradley's counsel on or about June 19, 2026, State Farm claim specialist Tawnia Randolph stated: "This is a wrongful death, the policy is, we don't follow the UIM policy language with regard to the settlement, the surviving parents, both of them, do have a right to the settlement so we do need to copy both of them on the draft."

71. By letter dated June 19, 2026, Ms. Randolph confirmed State Farm's position in writing: "Heirs of a deceased are entitled to a claim whether or not they reside with the deceased or in the household for the insurance policy. Both parents have a right to a portion of the settlement." Ms. Randolph demanded that Bradley's counsel provide "case law that states otherwise." A copy of the June 19, 2026 letter is attached as **Exhibit B**.

72. State Farm's stated position is contrary to the express language of its own Policy, contrary to A.R.S. § 20-259.03, and contrary to Arizona case law—including case law arising from State Farm's own policies and claims practices.

73. State Farm identified no policy provision, statute, or decision supporting its position, because none exists.

74. On information and belief, State Farm conducted no reasonable investigation of its own Policy language or of Arizona law before taking and maintaining its position—or, having investigated, consciously disregarded what that investigation showed. Instead of executing its own duty to investigate the law, identify the benefits owed, and pay them to the person entitled to them, State Farm reversed the roles: it demanded that its own insured supply "case law" to justify enforcement of State Farm's own policy language, while offering nothing in support of its contrary position.

75. On June 25, 2026, Bradley's counsel responded in writing, setting out the Policy's UIM definitions and payment provisions, the full text of A.R.S. § 20-259.03, and the *Bither* and *White* decisions, and demanded that State Farm issue its policy-limit draft within five days, payable solely to Bradley and his counsel's law firm, without including Tariq's mother. The letter warned State Farm that its continuing refusal to pay its own insured in accordance with the Policy language constituted bad faith. A copy of the June 25, 2026 letter is attached as **Exhibit C**.

76. The five-day deadline expired on or about June 30, 2026. As of the filing of this Complaint, State Farm has not issued payment as directed, has not identified any

provision of the Policy or of Arizona law supporting its refusal, and continues to withhold UIM benefits that it concedes are owed.

77. State Farm has never stated in writing the basis in the Policy or in Arizona law for its refusal to pay in accordance with its own policy language. Its refusal to pay Bradley alone rests on no specific policy provision, condition, or exclusion, and State Farm has never provided a written denial referencing any, contrary to the minimum claim-handling standards reflected in Ariz. Admin. Code R20-6-801(G)(1)(a). As of the filing of this Complaint, State Farm also has not responded to counsel's June 25, 2026 letter (counsel's second written demand) within ten working days, contrary to the standards reflected in Ariz. Admin. Code R20-6-801(E)(3). And by misrepresenting to its own insured who is entitled to UIM benefits under the Policy, State Farm failed to fully and accurately disclose pertinent policy provisions, benefits, and coverages, contrary to the standards reflected in Ariz. Admin. Code R20-6-801(D)(1).

78. In short, State Farm has denied Plaintiff's demand for full payment to him, the insured, rather than including Tariq's mother as a payee.

79. On information and belief, State Farm's conduct toward Bradley reflects a uniform claim-handling practice in Arizona: notwithstanding *White*, *Bither*, A.R.S. § 20-259.03, and the narrowed definition of "Insured" in its own post-*White* policy form, State Farm handles wrongful-death UIM claims such as Plaintiff's as though all statutory wrongful-death beneficiaries are entitled to share in the policy proceeds, refuses to "follow the UIM policy language," pays UIM benefits in whole or in part to non-insureds, and conditions payment on the inclusion of non-insureds as payees on its settlement drafts or payments.

80. This practice benefits State Farm at the expense of its insureds. By including every statutory beneficiary on the draft, State Farm seeks to secure releases from and/or buy peace with individuals to whom it owes nothing under its policies. In doing so, it obtains protection that extends beyond the benefits owed, at no additional cost to itself,

contrary to the terms of its Policy, while diluting the recovery of the surviving insureds who are the only ones entitled to those benefits under State Farm's own policy terms.

81. State Farm is seeking an unfair financial advantage in the claims process, putting its own interests ahead of those of its insureds and violating its duty of equal consideration.

## VI. CLASS ACTION ALLEGATIONS

82. This action is brought and may properly be maintained as a class action, as it satisfies the numerosity, commonality, typicality, and adequacy requirements of Federal Rule of Civil Procedure 23. Plaintiff brings all claims herein individually and as a class action (for the Class defined below) pursuant to Rule 23.

83. The Class consists of the following:

> From the earliest date allowed by law to the date of entry of judgment, all Arizona residents who were insureds under UIM coverage in a State Farm Mutual Automobile Insurance Company motor vehicle policy issued or delivered in Arizona; submitted, or were included in, a claim for UIM benefits arising from the wrongful death of an insured; were statutory wrongful-death claimants under A.R.S. § 12-612; were insureds under the applicable UIM coverage; and whose UIM benefit payment was made, issued, or conditioned through a check, draft, payment instrument, release, or other payment documentation that included, identified, or required the participation of one or more statutory wrongful-death claimants who were not insureds under the applicable UIM coverage.

84. While the exact number of members cannot be determined without discovery, the Class consists of at least dozens of Arizona claimants. The Class is therefore so numerous that joinder of all members is impracticable. The exact number of Class members can readily be determined from documents and claim files in State Farm's possession.

85. Additionally, joinder is impracticable here because the Class Members are unaware of their rights. State Farm tells its Arizona insureds that uninsured statutory beneficiaries must sign a release as a prerequisite for insured statutory beneficiaries to receive the coverage they are entitled to. As such, the Class Members are unlikely to join

a lawsuit to recover for claims their insurer misled them about and which involve confusing legal concepts relating to statutory beneficiaries, resident relatives, and first-party underinsurance coverage.

86. There are questions of fact and law common to the Class, including the following:

i. Whether State Farm's standard Arizona policy form limits UIM wrongful-death benefits to statutory claimants who are also surviving insureds under the same coverages;

ii. Whether A.R.S. § 20-259.03, along with State Farm's Policy, precludes recovery of UIM wrongful-death benefits by statutory beneficiaries who are not surviving insureds under the policy;

iii. Whether State Farm has a practice of paying wrongful-death UIM benefits in whole or in part to non-insured statutory beneficiaries, or of conditioning payment on the inclusion of such non-insureds as payees on its settlement drafts, when there are statutory wrongful death claimants who meet the definition of "Insured" in the Policy's UIM coverage;

iv. Whether State Farm misrepresents to its insureds the persons entitled to UIM wrongful-death benefits under its policies and Arizona law;

v. Whether, through the foregoing practice, State Farm breached its contracts with its insureds;

vi. Whether, through the foregoing practice, State Farm breached the implied covenant of good faith and fair dealing, including by departing from the minimum claim-handling standards reflected in A.R.S. § 20-461 and Ariz. Admin. Code R20-6-801;

vii. Whether, through the foregoing practice, State Farm caused and will continue to cause harm to its insureds;

viii. Whether State Farm's above-referenced conduct as to the Class warrants an award of compensatory damages;

ix. Whether State Farm's above-referenced conduct as to the Class warrants an award of punitive damages; and

x. Whether Plaintiff and the Class are entitled to an award of attorneys' fees.

87. Plaintiff has the same interests in this matter as all other members of the Class, and his claims are typical of those of all members of the Class. Plaintiff's claims are coincident with, and not antagonistic to, those of the other Class members he seeks to represent. Plaintiff and all Class members have been harmed by State Farm's common course of conduct as outlined herein.

88. Plaintiff is committed to pursuing this action and has retained competent counsel experienced in insurance litigation and class action litigation. Plaintiff will fairly and adequately represent the interests of the Class members. Neither Plaintiff nor his counsel has any interest adverse to those of the other members of the Class.

89. Class certification is appropriate under Federal Rule of Civil Procedure 23(b)(2) because State Farm's actions are generally applicable to the Class as a whole, and Plaintiff seeks, inter alia, equitable remedies with respect to the Class as a whole.

90. Class certification is appropriate under Federal Rule of Civil Procedure 23(b)(3) because the questions of law or fact common to Class members predominate over any questions affecting only individual members, and a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

91. Class certification is appropriate under Federal Rule of Civil Procedure 23(c)(4) because resolution of key fact issues common to the Class—whether State Farm's practice of paying wrongful-death UIM benefits to non-insureds, or conditioning payment on their inclusion, violates its policy language and Arizona law, breaches the insurance contract, and/or constitutes bad faith—will materially advance the litigation.

92. Absent a class action, most of the members of the Class will remain unaware of their rights and/or will find the cost of litigating their claims prohibitive, and will therefore have no effective remedy. The class treatment of common questions of law and fact conserves the resources of the courts and the litigants and promotes consistency and efficiency of adjudication.

**FIRST CLAIM FOR RELIEF**
**(Breach of Contract on behalf of Plaintiff and the Class)**

93. Plaintiff incorporates by reference all prior allegations in this Complaint as if fully set forth herein.

94. The Policy is a valid and enforceable contract between Bradley and State Farm. All premiums due under the Policy were paid, and Bradley performed all conditions and obligations required of him under the Policy.

95. Under the express terms of the Policy's Underinsured Motor Vehicle Coverage and A.R.S. § 20-259.03, State Farm is obligated to pay UIM wrongful-death benefits solely to surviving insureds who are qualified to bring a wrongful death action pursuant to A.R.S. § 12-612.

96. State Farm breached the Policy by failing and refusing to pay UIM benefits in accordance with the Policy's terms; by conditioning payment of the benefits on the inclusion of a non-insured as a payee on its settlement draft, contrary to the Policy's definition of "Insured" and its payment provisions; and by failing to pay the benefits owed within the time demanded and within a reasonable time. State Farm breached its standardized policies with the members of the Class in the same manner.

97. As a direct and proximate result of State Farm's breaches, Plaintiff and the Class have been damaged, and continue to be damaged, in amounts to be proven at trial, including the withheld and diluted benefits owed under the policies, consequential damages, and interest. Plaintiff and the Class are also entitled to their reasonable attorneys' fees pursuant to A.R.S. § 12-341.01.

**SECOND CLAIM FOR RELIEF**
**(Bad Faith on behalf of Plaintiff and the Class)**

98. Plaintiff incorporates by reference all prior allegations in this Complaint as if fully set forth herein.

99. Inherent and implied in the Policy, and in each Class member's policy, is a covenant of good faith and fair dealing owed to Plaintiff and the Class. Under the duty of good faith and fair dealing, an insurer must deal fairly with an insured, giving equal

consideration in all matters to the insured's interests, and must not place its own interests ahead of the insured's. *See, e.g., Rawlings v. Apodaca*, 151 Ariz. 149, 156-57, 726 P.2d 565, 572-73 (1986).

100. The tort of bad faith arises when an insurer "intentionally denies, fails to process or pay a claim without a reasonable basis." *Noble v. Nat'l Am. Life Ins. Co.*, 128 Ariz. 188, 190, 624 P.2d 866, 868 (1981). "The appropriate inquiry is whether there is sufficient evidence from which reasonable jurors could conclude that in the investigation, evaluation, and processing of the claim, the insurer acted unreasonably and either knew or was conscious of the fact that its conduct was unreasonable." *Zilisch v. State Farm Mut. Auto. Ins. Co.*, 196 Ariz. 234, 995 P.2d 276, 280 (2000).

101. State Farm acted objectively unreasonably toward Plaintiff and the Class by withholding UIM benefits it concedes are owed; by conditioning payment on the inclusion of non-insureds as payees, contrary to the express language of its own policies, A.R.S. § 20-259.03, and controlling Arizona case law; by misrepresenting to its insureds the persons entitled to benefits under its policies; by failing to conduct an investigation of its Policy language and Arizona law adequate to determine whether its position was tenable, such that it lacked any founded belief for that position; by demanding that its insureds justify enforcement of State Farm's own policy language while itself identifying no authority whatsoever for its position; and by forcing Class Members to split their coverage with persons not entitled to payment under the policy.

102. State Farm acted with knowledge of, or in conscious disregard of, the unreasonableness of its conduct. As a matter of course, State Farm does not follow its own policy language regarding UIM settlements. State Farm litigated *White* and lost, and thereafter narrowed the definition of "Insured" in its own Arizona UIM coverage—while retaining the broad "entitled to recover compensatory damages" language in the UM coverage of the same policy form. State Farm is a sophisticated, repeat litigant of UM/UIM definitional issues before Arizona's appellate courts—from *State Farm Mut. Auto. Ins. Co. v. Lindsey*, 182 Ariz. 329, 897 P.2d 631 (1995), to *White* and many others,

to *Balzan*, decided in State Farm's favor on July 6, 2026, while this claim was pending. State Farm knows precisely what its policy language provides, what its drafting distinctions mean, and what A.R.S. § 20-259.03 requires—and it enforces that policy language strictly when enforcement serves its interests, while refusing to "follow the UIM policy language" when disregard serves its interests.

103. State Farm further violated its duty of good faith and departed from Arizona's minimum claim-handling standards, including those reflected in A.R.S. § 20-461(A)(1), (2), (4), (5), (6), and (8) and Ariz. Admin. Code R20-6-801(D)(1), (E)(3), and (G)(1)(a), by misrepresenting pertinent policy provisions and failing to fully disclose the benefits and coverages due under the Policy; by refusing payment without a reasonable investigation and without ever identifying in writing any specific policy provision, condition, or exclusion supporting its position; by failing to timely respond to its insured's pertinent communications; by failing to attempt in good faith to promptly, fairly, and equitably resolve a claim on which its liability is not merely reasonably clear but conceded; and by forcing its insured through needless adversarial hoops—including this lawsuit—to obtain benefits that are concededly owed.

104. State Farm's conduct strikes at the very security, protection, and peace of mind the Policy was purchased to provide, and it does so at the moment of its insureds' greatest vulnerability—the death of a family member. Rather than honoring its insured's right to honest and fair treatment, State Farm has exploited the claim process to extract, at its insured's sole expense, protection from a stranger to the Policy, seeking an unfair financial advantage from its position of superior knowledge and bargaining power.

105. State Farm acted with the requisite state of mind to support punitive damages. Upon information and belief, its claims-handling personnel are trained not to follow the UIM policy language and to secure releases from statutory beneficiaries not insured under the policy.

106. State Farm, therefore, acted in bad faith toward Plaintiff and the Class.

107. As a direct and proximate result of State Farm's bad faith, Plaintiff and the Class have suffered damages, including the loss of use of the withheld benefits, consequential and incidental damages, and attorneys' fees and costs incurred to obtain the benefits owed, in amounts to be proven at trial.

108. State Farm's conduct as to Plaintiff and the Class was aggravated and outrageous. State Farm consciously pursued a course of conduct knowing that it created an unjustifiably substantial risk of significant harm to its insureds, deliberately overriding its own policy language and black-letter Arizona law to serve its own interests. State Farm had, and has, a significant financial motive for that course of conduct: using benefits belonging solely to its insureds to purchase peace with non-insured claimants, at no additional cost to itself. State Farm acted with the requisite "evil mind" and is, therefore, liable to Plaintiff and the Class for punitive damages, which can be proven with common evidence.

**THIRD CLAIM FOR RELIEF**
**(Bad Faith as to Plaintiff)**

109. Plaintiff incorporates by reference all prior allegations in this Complaint as if fully set forth herein.

110. This claim is brought by Plaintiff in his individual capacity only and seeks all noneconomic damages personal to him, including emotional distress, anxiety, loss of peace of mind, and the aggravation of being forced to fight his own insurer for benefits at a time of profound personal vulnerability.

111. State Farm's conduct did not merely result in economic damages. For Plaintiff, the claim arose from the death of his son, at a moment when the protections promised by the Policy were supposed to provide security, stability, and peace of mind. Instead, State Farm used that moment to impose an unreasonable and extra-contractual condition on payment, refusing to issue the UIM benefits it conceded were owed unless Plaintiff agreed to include non-insureds as payees, contrary to the Policy language, A.R.S.

§ 20-259.03, and Arizona authority addressing State Farm's own UM/UIM policy language.

112. State Farm's refusal to pay Plaintiff consistent with the terms of its own Policy caused harm distinct from the economic loss described above. Plaintiff was forced to confront uncertainty, distress, frustration, and anxiety over whether State Farm would honor the very coverage purchased to protect against catastrophic loss. The denial and delay deprived Plaintiff of the peace of mind that insurance is intended to provide and compounded the grief, disruption, and emotional strain associated with the death of his son. *See Rawlings*, 726 P.2d at 572-73.

113. State Farm's bad faith was especially harmful because it required Plaintiff to become an adversary of his own insurer while he was dealing with the aftermath of his son's death. It caused him to have to retain counsel and litigate at a time Plaintiff, as an insured, was entitled to protection under the Policy. During this time, State Farm shifted the burden to him to prove that State Farm should follow its own contract and Arizona law. State Farm demanded that Plaintiff supply "case law" to justify payment in accordance with the Policy, while State Farm identified no authority supporting its contrary position and continued to withhold benefits it did not dispute were owed.

114. State Farm acted objectively unreasonably toward Plaintiff by, among other things, withholding UIM benefits it concedes are owed; by conditioning payment on the inclusion of a non-insured as a payee, contrary to the express language of the Policy, A.R.S. § 20-259.03, and controlling Arizona case law; by misrepresenting to Plaintiff the persons entitled to benefits under its policies; by failing to conduct an investigation of its Policy language and Arizona law adequate to determine whether its position was tenable, such that it lacked any founded belief for that position; by demanding that Plaintiff supply "case law" to justify enforcement of State Farm's own policy language while itself identifying no authority whatsoever for its position; and by compelling Plaintiff to institute litigation to recover amounts due under the Policy.

115. State Farm acted with knowledge of, or in conscious disregard of, the unreasonableness of its conduct. State Farm's claim representative expressly admitted that State Farm does not "follow the UIM policy language with regard to the settlement."

116. State Farm knows precisely what its policy language provides, what its drafting distinctions mean, and what A.R.S. § 20-259.03 requires—and it enforces that policy language strictly when enforcement serves its interests, while refusing to "follow the UIM policy language" when disregard serves its interests. State Farm also knows that it revised its policies to exclude the very types of statutory beneficiaries it now seeks to force its insureds to get a release from before tendering conceded policy benefits.

117. State Farm's conduct foreseeably inflicted noneconomic injury on Plaintiff. Its refusal to honor the Policy as written caused Plaintiff a variety of noneconomic damages, including emotional distress, anxiety, frustration, inconvenience, and loss of peace of mind. It also aggravated the harm inherent in the underlying loss by forcing Plaintiff to expend emotional energy, time, and attention contesting State Farm's position when he should have been able to rely on his insurer for fair dealing and prompt payment.

118. Plaintiff's noneconomic damages were the natural and probable result of an insurer knowingly refusing to pay an insured unless he accepted a condition not found in the Policy. State Farm knew that Plaintiff's claim involved the death of a family member and knew, or consciously disregarded, that withholding conceded benefits under those circumstances would place additional emotional pressure on Plaintiff and cause distress beyond the amount of the withheld payment.

119. State Farm acted with the requisite state of mind to support punitive damages. Its claims representative admitted that State Farm does not "follow the UIM policy language with regard to the settlement."

120. State Farm also had extensive knowledge of Arizona UM/UIM law, including from its own repeated litigation of definitional issues in Arizona appellate courts, including *Lindsey*, *White*, and *Balzan*. Despite that knowledge, State Farm chose to disregard the Policy language and Arizona law in handling Plaintiff's claim.

121. State Farm's broader pattern of conduct further supports the punitive-damages showing because it demonstrates that State Farm's treatment of Plaintiff was not an isolated mistake. State Farm knew what its Policy language said, knew the significance of the drafting distinctions in its Arizona UM and UIM coverages, and knew what A.R.S. § 20-259.03 required. Yet State Farm applied a position it knew or consciously disregarded was unreasonable to Plaintiff's claim, placing its own institutional interests ahead of Plaintiff's rights at a time when Plaintiff was uniquely vulnerable.

122. State Farm's conduct was aggravated, oppressive, and undertaken with an evil mind because State Farm consciously pursued a course of conduct that delayed and obstructed payment of benefits owed to Plaintiff despite knowing the likely consequences to him. State Farm's decision to force Plaintiff to fight for conceded benefits after the death of a family member showed conscious disregard for Plaintiff's rights, emotional well-being, and peace of mind.

123. As a direct and proximate result of State Farm's bad faith, Plaintiff suffered individual noneconomic damages and other personal harms to be proven at trial. Plaintiff is also entitled to recover punitive damages in an amount sufficient to punish State Farm and deter similar misconduct.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment against State Farm as follows:

A. An order appointing Plaintiff as class representative and his counsel as class counsel, and certifying the Class under Federal Rule of Civil Procedure 23;

B. Compensatory and consequential damages for Plaintiff and the Class in an amount to be proven at trial;

C. Punitive damages for Plaintiff and the Class in an amount to be proven at trial;

D. Noneconomic damages for Plaintiff in an amount to be proven at trial;

E. An award of attorneys' fees pursuant to any applicable authority, including but not limited to A.R.S. § 12-341.01;

F. Statutory interest for Plaintiff and the Class pursuant to A.R.S. § 20-462(A) from the date payment of the UIM benefits was due;

G. Costs and expenses incurred herein to the maximum extent permitted by law;

H. Pre-judgment and post-judgment interest to the maximum extent permitted by law; and

I. Such other relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff demands a jury trial pursuant to Federal Rule of Civil Procedure 38 for all claims and issues so triable.

DATED this 15th day of July, 2026.

HAGENS BERMAN SOBOL SHAPIRO LLP

By: */s/ Robert B. Carey*
Robert B. Carey
John M. DeStefano
E. Tory Beardsley

TAYLOR & GOMEZ LAW
Benjamin Taylor

*Attorneys for Plaintiff and the Proposed Class*